[No. 28062-7-I.   Division One.   August 30, 1993.]

THE CITY OF SEATTLE, *Petitioner,* v. MARION IVAN, *Respondent.*

*Mark H. Sidran, City Attorney,* and *David F. Shayne, Assistant,* for petitioner.

*Colleen O'Connor* of *Washington Appellate Defender Association,* for respondent.

KENNEDY, J. — The City of Seattle has been granted discretionary review of a decision of the King County Superior Court in a RALJ appeal reversing the conviction of Marion Ivan for attempted coercion under section 12A.06.090 of the Seattle Municipal Code. The City contends that the King County Superior Court erred by finding the ordinance unconstitutionally overbroad. Ivan argues that the superior court decision should be affirmed on the basis of overbreadth, vagueness and insufficiency of evidence. Finding the ordinance unconstitutionally overbroad, we affirm.

## I

The attempted coercion charge stems from an incident between Ivan and Katherine Hobson, an employee at a refugee resettlement office. One of Hobson's clients complained to Hobson that Ivan had kidnapped him. Hobson recommended to her client that he notify the police and pursue

charges. An action was filed and Hobson was scheduled to testify in the subsequent proceedings.

Ivan contacted Hobson by phone and in person, asking her why she was helping her client to make a case against him. Ivan claimed he "wasn't bad" and asked her "to take a second look at the man [she] was helping". Ivan then contacted Hobson's supervisor, Huot Khun, at least three times, and requested that Khun ask Hobson not to testify.. Khun testified that, during one such contact, Ivan stated that "he wanted to ask me to ask her [Hobson] don't come to the court and if she hurt him he would hurt her." Hobson was not present when Ivan made this statement.

The City of Seattle charged Ivan with attempted coercion under Seattle Municipal Code 12A.06.090,[1] which states:

> A. A person is guilty of coercion if by use of a threat he compels or induces a person to engage in conduct which the latter has a legal right to abstain from, or to abstain from conduct which he has a legal right to engage in.
> B. "Threat" as used in this section means:
> 1. To communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or
> 2. Threats as defined in Section 12A.08.050(L).

SMC 12A.08.050(L) provides:

> "Threat" means to communicate, directly or indirectly, the intent:
> 1. To cause bodily injury in the future to another; or
> 2. To cause damage to property of another; or
> 3. To subject another person to physical confinement or restraint; or
> 4. To accuse another person of a crime or cause criminal charges to be instituted against another person; or
> 5. To expose a secret or publicize an asserted fact, whether true or false, tending to subject another person to hatred, contempt or ridicule; or
> 6. To reveal significant information sought to be concealed by the person threatened; or

---

[1]SMC 12.06.090(A) tracks precisely the language of RCW 9A.36.070, the state coercion statute. However, the scope of a "threat" in RCW 9A.36.070 is limited to threats of immediate or future harm to person, property, or a threat to restrain or confine the victim. *See* RCW 9A.04.110(25)(a)-(c).

7. To testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

8. To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or

9. To bring about or continue a strike, boycott, or other similar collective action with the intent to obtain property which is not demanded or received for the benefit of the group which the actor purports to represent; or

10. To do any other act which is intended to harm substantially any person with respect to his health, safety, business, financial condition, or personal relationships.

Ivan was tried in Seattle Municipal Court and found guilty of attempted coercion on December 12, 1988. Pursuant to RALJ 2.2, Ivan appealed his conviction to King County Superior Court, alleging that the evidence was insufficient to support his conviction and that the ordinance was unconstitutional on the basis of overbreadth and vagueness. The Superior Court ruled that the coercion ordinance was unconstitutionally overbroad because the ordinance omitted an express requirement of specific criminal intent and impinged upon protected free speech activities. The court also ruled that no acceptable limiting construction would cure the constitutional defects. The court did not reach the issues of vagueness or insufficiency of the evidence. Ivan's conviction was reversed. The City of Seattle then petitioned this court for discretionary review pursuant to RAP 2.3. Discretionary review was granted.

II

■■ The City asserts that the Superior Court erred by finding that SMC 12A.08.050(L) is unconstitutionally overbroad.[2] Overbreadth analysis is intended to ensure that legislative enactments do not prohibit constitutionally protected conduct, such as free speech. *Tacoma v. Luvene*, 118

---

[2] The parties have not argued that the statute is overbroad based upon the Washington State Constitution; therefore this analysis is limited to the federal constitution. State constitutional analysis must be raised and briefed independently. *In re Mota*, 114 Wn.2d 465, 788 P.2d 538 (1990).

Wn.2d 826, 827 P.2d 1374 (1992). An initial inquiry in over-breadth analysis is whether Ivan has standing to attack the ordinance as facially overbroad in light of the fact that the Superior Court found his behavior to fall within the legitimate application of the ordinance. Although Ivan's behavior falls within the "hard core" of the statute, third party standing is appropriate when the challenged statute may chill constitutionally protected behavior. *Luvene*, 118 Wn.2d at 840. This principle is justified on the basis that other individuals should not be put at risk of criminal prosecution for constitutional conduct. *Luvene*, 118 Wn.2d at 840. The ordinance in this case extends on its face to encompass both conduct and speech; "threat" is defined as a communication. Therefore, Ivan has standing to assert overbreadth, and hypothetical behavior may be used to illustrate the alleged overbreadth of the ordinance. *Blondheim v. State*, 84 Wn.2d 874, 876, 529 P.2d 1096 (1975).

In order to determine whether a statute is overbroad, a reviewing court must first ascertain whether the law prohibits a real and substantial amount of constitutionally protected conduct. *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (citing *Houston v. Hill*, 482 U.S. 451, 458, 96 L. Ed. 2d 398, 107 S. Ct. 2502 (1987)). Criminal statutes receive a more exacting scrutiny and may be facially invalid even if they have a legitimate application. *Huff*, 111 Wn.2d at 925; *Hill*, 482 U.S. at 459.

The ordinance in the instant case prohibits "threats". The behavior proscribed by the statute encompasses pure speech, and not merely conduct. "Threat" is expressly defined as a communication of the speaker's intent to perform a specific act. Such communications are not necessarily outside the scope of protected speech.[3] Communications that are "fighting words" and inflict injury or encourage immediate breach of the

---

[3]*But see State v. Kepiro*, 61 Wn. App. 116, 122, 810 P.2d 19 (1991) wherein the court broadly stated that "[c]ommunications which qualify as threats are outside the realm of protected speech", (citing *State v. Brown*, 50 Wn. App. 405, 411, 748 P.2d 276 (1988)). *Kepiro* addressed a challenge to a state statute prohibiting the

peace are not protected speech under the First Amendment. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 86 L. Ed. 1031, 62 S. Ct. 766 (1942). Even offensive and provocative speech is protected unless it is likely to produce a "clear and present danger of a serious substantive evil . . .". *Terminiello v. Chicago*, 337 U.S. 1, 4, 93 L. Ed. 1131, 69 S. Ct. 894 (1949). Similarly, words that are calculated to produce immediate panic may not be protected speech. *Schenck v. United States*, 249 U.S. 47, 52, 63 L. Ed. 470, 39 S. Ct. 247 (1919).

The ordinance in the present case defines "threat" broadly and prohibits a wide range of communications beyond mere fighting words and other nonprotected speech.[4] The City

---

intimidation of a judge; and a "threat" as defined by the relevant portion of RCW 9A.72.160 was defined as communicating the intent to "cause bodily injury in the future to the person threatened . . .". The defendant asserted that the statute impinged upon his First Amendment rights of free speech. The court implied a requirement that the threat be a "true" threat, relying on several federal circuit decisions attempting to define a "true" threat as one that a reasonable person would believe was a serious expression of intent to cause physical harm. *Kepiro*, 61 Wn. App. at 124-25. The court found the actual intent to cause harm irrelevant because the crime stems from the communication itself. *Kepiro*, 61 Wn. App. at 125. *Kepiro*'s broad pronouncement that all threats are unprotected should be construed within the narrow provision at issue in that case: threat of bodily injury. The statute in the instant case is far broader, and *Kepiro* does not necessarily apply to each provision of SMC 12A.06.090. *See also State v. Brown*, 50 Wn. App. at 411 (threat to cause bodily injury or physical damage to the property of another is not protected speech); *Watts v. United States*, 394 U.S. 705, 707, 22 L. Ed. 2d 664, 89 S. Ct. 1399 (1969) (true threats must be distinguished from constitutionally protected speech); *United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir.) (threats inflicting injury or inciting breach of peace are unprotected), *cert. denied*, 484 U.S. 860, 98 L. Ed. 2d 127, 108 S. Ct. 173 (1987); *United States v. Barcley*, 452 F.2d 930, 934 (8th Cir. 1971) (true threat requires unequivocal threat of injury).

[4]Other courts have struggled with statutory language similar to the examples set forth in SMC 12A.08.050(L), and set forth illustrative behaviors that would be prohibited. For instance, under a provision similar to subsection (5), the Oregon Supreme Court noted in *State v. Robertson*, 293 Or. 402, 649 P.2d 569 (1982) that prohibited hypothetical behavior could include "situations in which one man tells another: 'If you don't quit making love to my wife, I'm going to tell your wife,' or someone proposes to disclose an airline pilot's secret illness if he does not get medical attention, or a politician's embarrassing past if he does not withdraw his candidacy from office." *Robertson*, at 418. Under subsection (6), prohibited situations would include one in which "a journalist advises a public official that he will

itself concedes in its brief that the ordinance may prohibit otherwise protected speech. Brief of Petitioner, at 8. However, the overbreadth analysis is not necessarily ended at that point because even protected speech may be regulated by viewpoint neutral, reasonable time, place and manner restrictions. *Seattle v. Huff*, 111 Wn.2d 923, 926, 767 P.2d 572 (1989) (citing *Bering v. Share*, 106 Wn.2d 212, 221-22, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050, 93 L. Ed. 2d 990, 107 S. Ct. 940 (1987)); *Seattle v. Eze*, 111 Wn.2d 22, 33, 759 P.2d 366, 78 A.L.R.4th 1115 (1988). A different standard for regulation applies depending on whether the speech takes place in a public or nonpublic forum. Public forums are places traditionally devoted to assembly and debate, or channels of communication used by the public for assembly and speech by certain speakers or for the discussion of certain topics. *Seattle v. Huff*, 111 Wn.2d at 927. The speech sought to be prohibited in the case at hand is more appropriately analyzed as taking place in a nonpublic forum because of the private nature of the proscribed behavior; the statute contemplates private communications between individuals. *See Huff*, 111 Wn.2d at 927 (telephone discussions are of a private nature and not a public forum).[5]

Speech in a nonpublic forum may be regulated if "the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Seattle v. Eze*, 111 Wn.2d at 32 (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985)). The Seattle ordinance, however,

---

disclose private facts showing an official's financial interest in a pending measure if the official does not refrain from voting on the measure," or if one judge states to another that he will dissent and expose the writing judge's error unless the writing judge changes some aspect of the opinion. *Robertson*, at 419.

[5] A public forum is one which is devoted to assembly or debate by tradition or government fiat, or a method of communication used by the public for assembly and speech. *Seattle v. Huff*, 111 Wn.2d at 927 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983); *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985)).

prohibits such a wide range of speech that it is impossible to find its proscriptions reasonable. As pointed out by Ivan, SMC 12A.08.050(L)(4) could be applied to proscribe prosecutors from plea bargaining. Subsections (L)(5) and (6) could impinge on freedom of the press to release information. Subsection (L)(7) could discourage a witness from testifying. Subsection (L)(9) could chill the ability of groups to engage in boycotts and collective bargaining.

This sample of prohibited behavior gives some indication of the wide scope of proscribed behavior. These situations are not reasonably distinguishable from other instances of protected speech and cannot be constitutionally regulated by the Seattle ordinance. The City argues that, under *Bering v. Share*, *supra*, coercive speech may be regulated if a sufficiently significant government interest exists. *Bering*, 106 Wn.2d at 226. The regulation of coercive speech was addressed by the United States Supreme Court in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910, 73 L. Ed. 2d 1215, 102 S. Ct. 3409 (1982), wherein the Court found that an NAACP consumer boycott was protected expression and immune from state prohibition:

> Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action. . . .
>
> . . . .
>
> The presence of protected activity, however, does not end the relevant constitutional inquiry. Governmental regulation that has an incidental effect on First Amendment freedoms may be justified in certain narrowly defined instances.

*Claiborne*, 458 U.S. at 910-12.

The City argues that the "societal need for this law" justifies its incidental effect on free speech, arguing that it does not prohibit the acts set forth in SMC 12A.08.050(L) unless accomplished by threat. But as recognized in *Claiborne*, even coercive speech is protected under the First Amendment. The effect of the Seattle ordinance on speech is more than incidental; it could potentially prohibit a real and substantial amount of protected speech. The City claims it has a compelling interest in protecting its citizens from extortion-like threats, yet the ordinance is not so narrowly defined and

prohibits many communications besides those extortionate in nature. Accordingly, the ordinance is overbroad on its face.

This result is consistent with the Oregon Supreme Court's determination in a case involving a similar coercion statute, *State v. Robertson*, 293 Or. 402, 649 P.2d 569 (1982). The analysis of the *Robertson* court is persuasive. The court distinguished extortion statutes, which are generally upheld as constitutionally valid, on the basis that extortion requires the unlawful compelling of the victim to give up property; it is an extension of theft. *Robertson*, at 418-20. *See also United States v. Hutson*, 843 F.2d 1232, 1234-35 (9th Cir. 1988) (extortionate threats are not protected speech); *Stein v. Commonwealth*, 12 Va. App. 65, 402 S.E.2d 238, 242 (1991) (statute prohibiting threats of extortion is not unconstitutionally overbroad). The *Robertson* court concluded that, in contrast, the coercion statute encompassed a substantial amount of protected speech:

> The variety of arguably privileged expression proliferates when the statute is broadened to cover all demands "to engage in conduct from which [the addressee] has a legal right to abstain, or to abstain from engaging in conduct in which he has a legal right to engage." It is this extension that encompasses most of the hypothetical examples drawn from politics, journalism, family or academic life cited by defendants and the dissenters in the Court of Appeals to demonstrate the overbreadth of ORS 163.275.

*Robertson*, at 435. We agree with this analysis.[6]

■■ The City, however, argues that *Robertson* conflicts with Washington precedent interpreting the First Amendment and that the Seattle coercion statute may be restrictively construed to require an implicit element of criminal intent, thus saving the ordinance from overbreadth. A court may restrictively construe the statute in order to avoid constitutional impediments if the statute is amenable to a limiting construction. *State v. Reyes*, 104 Wn.2d 35, 700 P.2d 1155

---

[6]*Robertson* was also cited with approval in *Wurtz v. Risley*, 719 F.2d 1438 (9th Cir. 1983). The Ninth Circuit struck down a similar intimidation statute on the basis of overbreadth, reasoning that the statute prohibited a substantial amount of protected speech.

(1985). A reviewing court should construe the language of a law to uphold its constitutionality if possible. *Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990), *cert. denied*, 500 U.S. 908, 114 L. Ed. 2d 85, 111 S. Ct. 1690 (1991). However, the law should not be upheld if it is not possible to impose a sufficiently limited construction. *Tacoma v. Luvene*, 118 Wn.2d at 840; *Seattle v. Webster*, 115 Wn.2d at 641.

The City asserts that this court should construe the Seattle ordinance to require an implied element of criminal intent, which it asserts will sufficiently narrow the scope of the ordinance to avoid overbreadth. The City relies on *Seattle v. Slack*, 113 Wn.2d 850, 854, 784 P.2d 494 (1989). The court in that case upheld a prostitution loitering ordinance that proscribed loitering by one who loiters and "intentionally solicits, induces, entices, or procures another to commit prostitution." The court found that the specific requirement of criminal intent saved the statute from being overbroad. Likewise, in *Seattle v. Webster, supra*, the court upheld an ordinance prohibiting pedestrian interference. The ordinance disallowed intentional obstruction of pedestrian or vehicular traffic. The court found the expressed element of intent sufficiently narrowed the scope of the ordinance; therefore it was not unconstitutionally overbroad or vague.[7]

The ordinance in the instant case, however, contains no express requirement of criminal intent. The City argues that a requirement of criminal intent to threaten should be implied into the statute, thus curing any potential overbreadth defect. In general, if intent is not made an express element of the crime, the commission of the act itself constitutes the crime. *State v. Stroh*, 91 Wn.2d 580, 584, 588 P.2d 1182, 8 A.L.R.4th 760 (1979). Intent or guilty knowledge may be implied in certain circumstances in order to distinguish statutes which may otherwise punish innocent conduct. *Stroh*, 91 Wn.2d at 584. Intent may also be implied on the assump-

---

[7] *See also State v. Billups*, 62 Wn. App. 122, 128, 813 P.2d 149 (1991) (finding that specific requirement of criminal intent saved kidnapping and attempt statutes from overbreadth challenge).

tion that the Legislature did not intend to enact an unjust law. *Stroh*, 91 Wn.2d at 585.

Accordingly, in *Stroh*, the Washington Supreme Court implied an element of knowledge in the witness tampering statute to uphold the statute against a due process challenge. By implying an element of knowledge that the approached person was a witness, the potential for punishing innocent behavior was eliminated. The court extended this concept to rescue a bribery statute from an overbreadth challenge in *State v. O'Neill*, 103 Wn.2d 853, 700 P.2d 711 (1985). The court relied on *Stroh* as authority to imply that the Legislature intended to cover only individuals acting with corrupt intent and found that the implied element of corrupt intent saved the statute from being overbroad. *O'Neill*, 103 Wn.2d at 859.[8]

The analysis of the Supreme Court in *O'Neill* and *Stroh* appears to be somewhat inconsistent with its subsequent analysis in *Slack* and *Webster*, where the court implied that the absence of an express intent requirement may have rendered the statutes overbroad or vague. *Slack* and *Webster* do not cite or distinguish *O'Neill* or *Stroh*. The cases may be reconciled to some degree by *Tacoma v. Luvene*, 118 Wn.2d 826, 827 P.2d 1374 (1992). In that case, the defendant argued that a drug loitering ordinance was overbroad because it did not expressly require an element of criminal intent, but merely proscribed loitering manifesting the " 'purpose' to engage in drug-related activity." *Luvene*, 118 Wn.2d at 842. The court disagreed, stating that the statute did not prohibit conduct that only appeared drug related. The court con-

---

[8]The court has also implied a culpable mental element in *State v. Sherman*, 98 Wn.2d 53, 59, 653 P.2d 612 (1982), finding that a statute prohibiting driving "in a manner indicating a wanton and wilful disregard . . ." was not objective but also required a subjective mental state, which should have been indicated in the jury instructions. However, the court did not strike down the statute for vagueness, noting that the defendant had no standing to bring a vagueness claim.

This court has also recognized that a statute requiring proof of specific intent lends greater specificity to otherwise vague or indefinite terms. *See State v. Stark*, 66 Wn. App. 423, 832 P.2d 109 (1992).

strued "purpose" as a requirement of intent to engage in drug activity. The court noted that the mere illustrative circumstances set forth in the ordinance were insufficient without more to manifest intent for drug activity. *Luvene*, 118 Wn.2d at 842.[9] *Luvene* reaffirms the preference to judicially imply an element of intent to uphold criminal statutes from vagueness and overbreadth challenges.

The engrafting of an intent element is not helpful in the instant case, however. The statute at issue is distinguishable from the statutes discussed in the preceding cases, which addressed largely conduct: loitering, bribery, and witness tampering. In contrast, the gravamen of the offense as defined in the Seattle ordinance is the making of the threat itself; the intention to actually carry out the crime is not relevant. As noted in *State v. Kepiro*, 61 Wn. App. 116, 810 P.2d 19 (1991) and *State v. Brown*, 50 Wn. App. 405, 748 P.2d 276 (1988), threats to harm the person or property of an individual, whether immediate or in the future, require no additional element of intent because the defendant must intentionally utter the words; one cannot innocently threaten harm to another. The defects in the statute cannot be rectified by the addition of the requirement of intent to commit an additional overt act; the statute prohibits speech expressing an intent to perform lawful activity. An intent requirement would neither narrow its application to unprotected speech nor provide further guidance to law enforcement officials. As stated by the *Robertson* court:

> We also conclude that in the case of this statute the needed narrowing cannot be accomplished by judicial interpretation. The preceding paragraph has identified the sources of the statute's overbreadth in extending the principle of extortion to cover all demands to take or to refrain from nonobligatory action coupled with threats of adverse consequences in case of noncompliance, whether these demands and threats are stated privately or publicly and irrespective of the relationship of the parties themselves or with the public.

*Robertson*, at 436.

---

[9]The court also noted that the intent element was sufficient to save the statute from a vagueness defect. *Luvene*, 118 Wn.2d at 847-48.

█ Nor is this result inconsistent with Washington precedent, as the City suggests. Because SMC 12A.06.090 is not susceptible to a limiting construction, Ivan need not prove that his speech was protected to avoid punishment. As explained by the Washington Supreme Court in *State v. Reyes*, 104 Wn.2d at 42-43:

> We further note that because RCW 28A.87.010 is unsusceptible to a narrowing construction, appellant is not required to show that the words he used are protected speech in order to avoid criminal punishment. It is immaterial that the words used by appellant might be punishable under a properly limited statute.

(citing *Lewis v. New Orleans*, 415 U.S. 130, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974)). *See also Luvene*, 118 Wn.2d at 840-41 (enactment may be invalidated for overbreadth as applied to others even if defendant's conduct is within "hard core").

█ The City also argues that portions of the statute are constitutional and should be upheld and severed from any unconstitutional provisions. A legislative act need not be held entirely unconstitutional based upon one invalid provision unless the sections are so connected that there is reason to believe that the Legislature would not have passed one part without the other. *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972); *Seattle v. State,* 103 Wn.2d 663, 677, 694 P.2d 641 (1985); *see also Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 507, 86 L. Ed. 2d 394, 105 S. Ct. 2794 (1985). The existence of a severability clause is given great weight in ascertaining the Legislature's intent in making different parts of a statute severable. *Anderson*, 81 Wn.2d at 236; *Seattle v. State*, 103 Wn.2d at 678. The Seattle Municipal Code contains such a severability provision.[10]

We find, however, that the statute in this case sweeps so broadly that no judicial reconstruction can save it. If we were first to engraft a requirement of criminal intent, and

---

[10]"The provisions of this Code are declared to be separate and severable. The invalidity of any clause, sentence, paragraph, subdivision, section, chapter, title or other portion of this Code, or the invalidity of the application thereof to any person or circumstance shall not affect the validity of the remainder of this Code, or the validity of its application to other persons or circumstances." SMC 1.04.010.

then proceed to sever each subsection of SMC 12A.08.050(L), which prohibits or potentially prohibits a real and substantial amount of protected speech, we would have virtually rewritten the ordinance in contravention of the legislative intent of the Seattle City Council and without regard to the doctrine of separation of powers. As noted by Professor Lawrence Tribe, there is a difference between applying a saving construction and rewriting legislation in the face of contrary legislative intent. L. Tribe, *American Constitutional Law* 1032 n.4 (2d ed. 1988). The statute at issue requires extensive revision, and the rewriting is more appropriately done by the Seattle City Council than by this court. Because we find the ordinance unconstitutional on the grounds that it is facially overbroad, we need not address the issue of vagueness or sufficiency of the evidence.

We affirm.

GROSSE and BAKER, JJ., concur.