IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79736-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JESSE LEE ALLEN, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Jesse Lee Allen appeals his sentence for two counts of child molestation in the first degree. Allen challenges the trial court's authority to impose a sentence consecutive to his federal sentence for production and possession of child pornography arising from the same incidents. He claims his sentence goes against the intent of RCW 9.94A.589(3) because the State purposefully delayed filing child molestation charges until after his convictions in federal court. Allen also challenges several conditions of community custody and the imposition of supervision fees. We affirm Allen's sentence but remand to strike or modify certain conditions of community custody and strike the supervision fees.

FACTS

In October 2016, Allen's girlfriend discovered three videos on his cell phone showing him sexually abusing her six-year-old daughter in Allen's home. She confronted Allen about the videos and he confessed to the incidents, admitting that he "has a problem."

The State charged Allen with one count of first degree child rape and one count of first degree child molestation. Three weeks later, the United States Attorney's Office charged Allen in federal court with one count of production of child pornography and one count of possession of child pornography because he recorded and kept images of the sexual assaults on his cell phone.[1] The next day, the State dismissed its charges without prejudice, noting it "may refile charges following the federal prosecution." Allen did not object.

About 15 months later, Allen pleaded guilty as charged in federal court. The federal judge sentenced Allen in August 2018 to 20 years of confinement on one count and 10 years of confinement on the other count, running concurrently with one another.[2] On the same day as Allen's federal court sentencing, the State filed a new information charging him with two counts of first degree child molestation stemming from the same 2016 incidents. Allen did not object to the refiled charges.

Allen pleaded guilty to both charges in January 2019. The State's sentencing recommendation indicated the prosecutor planned to seek a

---

[1] Federal jurisdiction attached because a foreign country manufactured Allen's phone.

[2] Allen did not designate his federal judgment and sentence for this appeal. We rely on the parties' representations and the prosecutor's certification of criminal history for the details of his federal sentence.

sentence consecutive to that imposed for Allen's federal convictions. The felony plea agreement also included a "real facts" stipulation to the certification for determination of probable cause and the prosecutor's case summary.

The trial court sentenced Allen in March 2019. Defense counsel argued for a sentence within the standard range. He also urged the court to impose a sentence concurrent with Allen's federal sentence because all charges stemmed from "conduct that was occurring at the same time" and because Allen was already subject to an enhanced offender score based on the federal convictions.[3] Counsel argued the legislature presumed that "conduct that occurred simultaneously" would be sentenced concurrently, despite convictions for the conduct in different jurisdictions, and asked the judge to "look at the statutes and to look at the legislative intent and apply that to this situation." He asserted that a consecutive sentence was "clearly not what the legislature intended this Court to do."

The State requested a sentence at the high end of the standard range to run consecutive to Allen's federal sentence. The State argued Allen's conduct warranted such a sentence. The State also pointed out that if the case had stayed in state court, it could have charged one of the molestation counts as rape of a child in the first degree and could have added counts for possession of depictions of minors engaged in sexually explicit conduct. It argued that "[e]ach

---

[3] Under RCW 9.94A.525(17), each prior conviction for a sex offense is assigned 3 points, which in Allen's case raised his offender score from 3 to 9 on each count. His standard sentence range was 149 to 198 months.

of those would have counted and each would have scored and the State could have potentially asked for the three crimes or some exceptional sentence."

The victim's mother and grandmother addressed the court at sentencing. They spoke about the continued impact of the crimes on the victim and their family. Allen submitted a written letter and addressed the court on his own behalf. Allen's mother and brother also submitted letters supporting him and were present at the sentencing hearing. The court imposed an indeterminate sentence of 198 months to life on each count to run concurrently with each other but consecutive to the federal sentence.

The prosecutor asked for the "standard" community custody conditions listed in a preprinted form attached to the judgment and sentence as "Appendix H." Appendix H included a requirement that Allen "[p]ay supervision fees as determined by the Department of Corrections [(DOC)]." The prosecutor also asked for "special" crime-related conditions, arguing that the conditions "all . . . have a nexus to this particular offense." Appendix H listed the special conditions related to "sex offenses," requiring that Allen:

> 5.  Inform the supervising CCO[4] and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.
> . . . .
> 17.  . . . Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or the CCO.

---

[4] Community corrections officer.

4

. . . .

19. . . . Do not purchase or possess alcohol.

. . . .

23. . . . No [I]nternet access or use, including e[-]mail, without the prior approval of the supervising CCO.

24. . . . No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone, or computer-related device to which the defendant has access to monitor compliance with this condition.

The court imposed all of the requested conditions but amended condition 19 prohibiting Allen from purchasing or possessing alcohol to include "or any other controlled substances under [the] Uniform Controlled Substances Act[, chapter 69.50 RCW]." It also imposed only nondiscretionary legal financial obligations, ordering that Allen pay the mandatory victim penalty assessment of $500 and the mandatory DNA[5] collection fee of $100. Two weeks later, the court also signed an "Order of Indigency," waiving fees and appointing counsel at public expense on appeal. Allen appeals.[6]

ANALYSIS

Consecutive Sentence

Allen claims the trial court erred by imposing a sentence consecutive to his federal confinement. He argues we must vacate his sentence and impose a concurrent sentence because the trial court lacked authority to impose a

---

[5] Deoxyribonucleic acid.

[6] Allen moved under RAP 9.11 to supplement the record with the federal complaint and plea agreement so he could argue that we should reverse the superior court convictions on double jeopardy grounds. The State opposed the motion. A commissioner of this court ordered Allen to address the motion in his opening brief. Allen failed to include the issue in his brief so we do not reach the merits of his motion. See RAP 12.1(a).

consecutive sentence where the State "intentionally delays charges to manipulate the timing of the sentences."

We review a trial court's imposition of consecutive sentences for an abuse of discretion. State v. Champion, 134 Wn. App. 483, 487, 140 P.3d 633 (2006). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). An abuse of discretion occurs when the trial court applies the wrong legal standard or bases its ruling on an erroneous view of the law. State v. Ramirez-Estevez, 164 Wn. App. 284, 289-90, 263 P.3d 1257 (2011).

Here, the trial court imposed a consecutive sentence under RCW 9.94A.589(3),[7] which states, in pertinent part:

> [W]henever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that the confinement terms be served consecutively to each other.

When a statute is unambiguous, we derive the legislature's intent from the plain language alone. State v. Wentz, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). Allen concedes that the language of RCW 9.94A.589(3) unambiguously gives broad discretion to a sentencing court to impose either a concurrent or consecutive sentence for a crime the defendant committed before serving a

---

[7] We note the legislature amended RCW 9.94A.589(3) in 2020. LAWS OF 2020, ch. 276, § 1. Because the amendment does not substantially change the pertinent language quoted here, we cite the current statute.

felony sentence for a different crime. See State v. Mathers, 77 Wn. App. 487, 494, 891 P.2d 738 (1995). The court need only expressly order that the defendant serve the sentence consecutively. RCW 9.94A.589(3); Mathers, 77 Wn. App. at 494.

But Allen argues that "courts must 'avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences.' "[8] He asserts that imposing a consecutive sentence after the State intentionally delayed events to "ramp up Allen's prison time" goes against legislative intent. Allen urges us to interpret the statute "to preclude consecutive sentences under these circumstances." Allen offers State v. Moore, 63 Wn. App. 466, 820 P.2d 59 (1991), in support of his argument.

In Moore, the defendant was convicted of two separate second degree burglary charges in 1987. Moore, 63 Wn. App. at 467. He then failed to appear for sentencing. Three years later, the defendant was arrested and convicted of felony assault. Moore, 63 Wn. App. at 467. The court sentenced him on all three convictions at the same hearing. Moore, 63 Wn. App. at 467-68. It first imposed concurrent sentences for the burglary convictions. It then expressly ordered the sentence for the assault to run consecutive to the burglary sentences under former RCW 9.94A.400(3) (1988).[9] Moore, 63 Wn. App. at 468. The defendant argued that because he was sentenced for all three crimes at the same time, the convictions were "current offenses" under former RCW 9.94A.400(1)(a) and he

---

[8] Quoting State v. Elgin, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

[9] The legislature recodified RCW 9.94A.400 in 2001 as RCW 9.94A.589. LAWS OF 2001, ch. 10, § 6.

should have received concurrent sentences. Moore, 63 Wn. App. at 470. We affirmed the consecutive sentence because the defendant "directly caused the sentencing delay for the burglary convictions," and imposing concurrent sentences would "reward [him] for evading the punishment" for those convictions. Moore, 63 Wn. App. at 471. We reasoned, "This could not have been the Legislature's intent when it created the presumption of concurrent sentences in subsection (1)(a)" of former RCW 9.94A.400. Moore, 63 Wn. App. at 471.

Allen argues that Moore is "instructive" here "because it shows an attempt to manipulate the timing of sentencing to achieve advantage will not be condoned." He points to dicta[10] in the opinion that states:

> Clearly, we would not countenance a prosecutor's action of deliberately scheduling sentencing hearings for a defendant's multiple convictions in such a way as to avoid the presumption of concurrent sentences under the provisions of the SRA.[11]

Moore, 63 Wn. App. at 471. Allen's reliance on Moore is misplaced.

Moore addressed a defendant's purposeful delay in sentencing for multiple convictions in the same court where his crimes would have been sentenced separately but for his own misconduct. We concluded he should not benefit from that delay. Moore, 63 Wn. App. at 471. We also implied that we would not tolerate intentional delays by the State to sentence concurrent convictions separately in an attempt to gain an unfair advantage. Moore, 63 Wn. App. at 471. But here, Allen does not claim the prosecutor purposefully delayed

---

[10] "A statement is dicta when it is not necessary to the court's decision in a case." State v. Burch, 197 Wn. App. 382, 403, 389 P.3d 685 (2016) (citing Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 215, 304 P.3d 914 (2013)). Dicta is not binding authority. Burch, 197 Wn. App. at 403.

[11] Sentencing Reform Act of 1981, chapter 9.94A RCW.

sentencing hearings for multiple convictions in the same court. Instead, he challenges the State's exercise of its filing discretion, which subjected him to the possibility of a consecutive sentence under RCW 9.94A.589(3). See State v. Lewis, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990) (prosecuting attorneys are vested with great discretion in determining how and when to file criminal charges).

The conduct about which Allen complains—that the State intentionally delayed charges to manipulate the timing of sentencing—occurred well before he chose to plead guilty to the state charges, and he had the chance to challenge the State's exercise of its discretion when the State dismissed the charges without prejudice and again when the State refiled the charges. See State v. Oppelt, 172 Wn.2d 285, 287, 257 P.3d 653 (2011) (Where a defendant is prejudiced from either negligent or intentional delay in prosecuting an offense so that "fundamental conceptions of justice would be violated by allowing the prosecution," he is entitled to relief.). Instead, Allen sought relief at the discretion of the sentencing court. After receiving his federal sentence, he pleaded guilty to the State's charges, understanding that it would seek a consecutive sentence. He then asked the judge to exercise discretion under RCW 9.94A.589(3) and grant him a concurrent sentence to offset what he believed would be an unduly harsh result.

The trial court considered, and soundly rejected, Allen's argument. It determined that "[u]nder the egregious facts of this case," a consecutive sentence was appropriate despite Allen's perceived overreaching by the State.

9

The court found Allen's crimes were "horrifying offenses, extremely serious," and "have harmed the victim and her family and will continue to harm them for the rest of their lives." It also explained that Allen's written statement to the court before sentencing did not "begin to explain or show appropriate remorse for his conduct." And while the judge found Allen's oral statements at sentencing to be "more appropriate," Allen's words did not "go far enough to convince this Court that leniency is in any way appropriate under the circumstances of this case."

Unhappy with his sentence, Allen now argues the trial court "lacked authority to impose consecutive sentences under RCW 9.94A.589(3)" because it produced an absurd result. We disagree and conclude that the trial court properly exercised its broad discretion when it considered Allen's arguments and expressly determined his crimes warranted a sentence consecutive to his federal confinement.[12]

Community Custody Conditions

We review community custody conditions for abuse of discretion and will reverse only conditions that are manifestly unreasonable. State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019); State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). We usually uphold conditions of community custody if they are "crime-related." State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). A "crime-related prohibition" is "an order of a court prohibiting conduct

---

[12] Allen also suggests his sentences could not have run consecutively if the State had refiled charges before his federal conviction. His claim is speculative at best. Had state court convicted him before his federal conviction, the federal judge would also have broad discretion to impose a consecutive sentence. See 18 U.S.C. § 3584(a); United States v. Lynn, 912 F.3d 212, 217 (4th Cir.), cert. denied, 140 S. Ct. 86, 205 L. Ed. 2d 82 (2019) (federal judges have discretion to impose a consecutive or concurrent sentence as they deem appropriate).

that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). The prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." Irwin, 191 Wn. App. at 657. A court's imposition of an unconstitutional condition is manifestly unreasonable. Wallmuller, 194 Wn.2d at 238. We review constitutional questions de novo. Wallmuller, 194 Wn.2d at 238.

### 1. Internet and Computer Restrictions

Allen argues that the ban on his "[I]nternet access or use, including e[-]mail, without the prior approval of the supervising CCO" and the ban on "use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes" are unconstitutionally overbroad. We agree.

"Overbreadth analysis is intended to ensure that legislative enactments do not prohibit constitutionally protected conduct, such as free speech." City of Seattle v. Ivan, 71 Wn. App. 145, 149, 856 P.2d 1116 (1993). "Overbreadth goes to the question of whether State action is couched in terms so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." In re Pers. Restraint of Sickels, ___ Wn. App. 2d ___, 469 P.3d 322, 332 (2020). The mere fact that a community custody condition "impinges upon a constitutional right" does not invalidate it. Sickels, 469 P.3d at 332-33. " '[L]imitations upon fundamental rights are permissible, provided they are imposed sensitively.' " Sickels, 469 P.3d at 333 (quoting Riley, 121 Wn.2d at

11

37); accord State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008); State v. K.H.-H., 185 Wn.2d 745, 751-52, 374 P.3d 1141 (2016).

In Sickels, the State conceded and Division Three of our court agreed that the same conditions of community custody challenged here were not "sensitively imposed or reasonably necessary to accomplish the essential needs of the State." Sickels, 469 P.3d at 333-34, 335.

> Balancing the SRA's purposes against what would otherwise be Sickels's inviolate right to computer and [I]nternet access and use, we hold that [the] limitation of [I]nternet use to employment purposes is overly broad and [the] provision for "[n]o [I]nternet access or use, including e[-]mail" is even more objectionable. Delegating authority to Mr. Sickels's supervising CCO to approve [I]nternet access does not solve the problem; a sentencing court may not wholesaledly abdicate its judicial responsibility for setting the conditions of release.

Sickels, 469 P.3d at 335[13] (citing State v. Sansone, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005)).

We agree with the reasoning and holding in Sickels and conclude that the community custody conditions restricting Internet use and use of electronic devices with access to the Internet as written are overbroad. We remand to strike or modify the conditions.

2. Dating Restrictions

Allen challenges the community custody provision requiring that he must "[i]nform the supervising CCO and sexual deviancy treatment provider of any dating relationship" and "[d]isclose sex offender status prior to any sexual contact," and that "[s]exual contact in a relationship is prohibited until the

---

[13] Fifth alteration in original.

treatment provider approves of such." He argues the condition is not crime-related, overbroad, and impermissibly impacts his "constitutional freedoms" because his offenses were against a child, not an adult. The State concedes that prohibiting sexual contact in a relationship without prior approval is not crime-related. We accept the State's concession and remand to strike that portion of the condition.

Allen urges us to narrow the requirements to disclose any dating relationship to his CCO and treatment provider and to disclose his sex-offender status prior to any sexual contact to only adults who "have minor children." In State v. Autrey, 136 Wn. App. 460, 468, 150 P.3d 580 (2006), we rejected a similar challenge and held an "offender's freedom of choosing even adult sexual partners is reasonably related to their crimes because potential romantic partners may be responsible for the safety of live-in or visiting minors." We again affirmed identical conditions in Sickels, concluding that the conditions

> are reasonably related to the safety of the community. They protect individuals who Mr. Sickels dates or with whom he embarks on a sexual relationship by providing them with knowledge of the potential risk he presents to minors. They make it possible for Mr. Sickels's CCO and treatment provider to take whatever additional steps they might deem appropriate to protect anyone embarking on a dating or sexual relationship with [him].

Sickels, 469 P.3d at 328. We reach the same conclusion here.[14]

---

[14] Further, the requirements that Allen disclose dating relationships and his sex-offender status do not prohibit conduct:

> They are affirmative conduct requirements governed by RCW 9.94A.703(3)(d), which provides for a related but arguably broader standard: they must be "reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community."

Sickels, 469 P.3d at 328.

### 3.  Possession of Controlled Substances Restriction

Allen argues that the prohibition against "purchas[ing] or possess[ing] alcohol, or any other controlled substances under [the] Uniform Controlled Substances Act," is too broad and should be amended to add language that provides an exception for "lawfully issued prescriptions."  The State concedes. We accept the State's concession and remand to modify the condition.

### 4.  Areas Where Children Congregate Restriction

Allen challenges the condition that he

[s]tay out of areas where children's activities regularly occur or are occurring.  This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or the CCO.

Recognizing that Wallmuller, 194 Wn.2d at 245, rejected a challenge to the same notice condition, Allen objects only to the portion of the condition that he stay out of "any specific location identified in advance by DOC or the CCO." He argues that the condition is unconstitutionally vague and that DOC or his CCO could arbitrarily enforce the condition.

We also addressed the same condition in Sickels.[15]  We determined that "[t]he condition simply places a burden on DOC or the CCO to affirmatively identify locations they deem to be prohibited by the command."  Sickels, 469 P.3d at 331.  We concluded the condition does not invite arbitrary enforcement because the language does not empower a CCO to define prohibited areas

---

[15] See also State v. Terrones, No. 79781-6-I (Wash. Ct. App. Apr. 27, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/797816.pdf.

14

unrelated to the nonexhaustive list, and the condition requires notice to the defendant in advance when adding any restricted locations to the list.  Sickels, 469 P.3d at 331-32.  We affirm the condition.

Supervision Fees

Allen argues that we should strike the imposition of supervision fees because the court found him to be indigent.  We agree.[16]  RCW 9.94A.703(2)(d) gives the sentencing court discretion to order that the defendant "[p]ay supervision fees as determined by [DOC]."  Here, the trial court imposed only nondiscretionary costs or assessments at sentencing.  The court also declared Allen indigent for appellate purposes.  Despite the court's finding of indigence, Appendix H to Allen's judgment and sentence includes the discretionary supervision fee as a condition of community custody.  Because the record reflects the court's intent to waive all nondiscretionary legal financial obligations, we remand for the trial court to strike the provision.  See State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020).

---

[16] The State argues Allen waived his right to appeal this issue because he failed to object to supervision fees below.  While appellate courts normally decline to review issues raised for the first time on appeal, "RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right."  State v. Blazina, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015).  We exercise our discretion to do so here.

We affirm Allen's consecutive sentence but remand to strike or modify certain community custody conditions consistent with this opinion and to strike the supervision fees.

_____
Brennan, J

WE CONCUR:

_____      _____
                                Mann, C.J.