**Roy W. WHIMBUSH, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 92SC604.**

Supreme Court of Colorado,
En Banc.

Feb. 14, 1994.

David F. Vela, Colorado State Public Defender, and Joan E. Mounteer, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., and Katherine M. Clark, Asst. Atty. Gen., Cr. Enforcement Section, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

The petitioner, Roy W. Whimbush, was convicted of criminal extortion pursuant to section 18–3–207(1), 8B C.R.S. (1986). The Colorado Court of Appeals affirmed his conviction in an unpublished opinion, *People v. Whimbush*, No. 90CA2071 (Colo.App. July 16, 1992). We granted certiorari to consider whether section 18–3–207(1) is unconstitutionally overbroad, whether the trial court erred by denying a proposed jury instruction defining "threat," and whether the trial court erred by denying Whimbush's motion for judgment of acquittal when the prosecutor presented no evidence that Whimbush acted without legal authority. We hold that section 18–3–207(1) is unconstitutionally over-

broad on its face.[1] We reverse and remand the case with directions.

## I

Whimbush worked for a local mortuary for approximately one year selling pre-need funeral plans on a commission basis. Whimbush and the owner of the mortuary (the owner) eventually became involved in a dispute over the amount of commissions owed to Whimbush, and the two mutually agreed that Whimbush would no longer work at the mortuary.

The owner's staff threw a surprise birthday party for him at the mortuary on September 1, 1989, and hired a male stripper as entertainment. Even though he was no longer an employee, Whimbush attended the party and took photographs of the stripper's act.

Angered that the owner had not paid him the sum allegedly owed to him in commissions, Whimbush telephoned the mortuary on April 4, 1990. He asked the general manager of the mortuary to tell the owner that he had some photographs of the birthday party that he was going to sell to the highest bidder. Whimbush then called back an hour later and told the general manager that a local newspaper had offered him $3000 for the pictures.

In response to these calls, the owner contacted the Denver District Attorney's Office. That office arranged to have the owner's telephone monitored, and recorded conversations between the owner and Whimbush. In the first conversation, Whimbush told the owner that he had found a roll of film containing pictures of the stripper from the birthday party. Whimbush also stated that he would give the film to the owner if the owner paid him $2844, the amount Whimbush claimed the owner owed him in unpaid commissions. Later that day, the owner, accompanied by an undercover police officer and back-up officers, drove to Whimbush's home and delivered $3000 to him in exchange for the film. As soon as the money was exchanged for the film, Whimbush was arrested.

Whimbush was then charged with one count of criminal extortion pursuant to section 18–3–207(1), 8B C.R.S. (1986). After a jury trial, Whimbush was found guilty of criminal extortion[2] and was ultimately sentenced to two years' probation. The court of appeals affirmed the judgment of conviction.

## II

■ The extortion statute at issue in this case provides:

> Whoever without legal authority threatens to confine, restrain, or cause economic or bodily injury to the threatened person or another or to damage the property, economic well-being, or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an act or refrain from doing a lawful act commits criminal extortion which is a class 4 felony.

§ 18–3–207(1), 8B C.R.S. (1986). According to Whimbush, this statute is facially overbroad because it sweeps within its reach both constitutionally protected and unprotected speech. We agree.

■ A statute will be struck down as facially overbroad in violation of the state[3] and federal[4] constitutions if it substantially infringes upon constitutionally protected speech while proscribing speech which is not constitutionally protected. *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *People v. Ryan*, 806 P.2d 935, 939 (Colo.), *cert. denied*, — U.S. ——, 112 S.Ct. 177, 116 L.Ed.2d 140 (1991); *People v. Batchelor*, 800 P.2d 599, 601 (Colo.1990). Thus, to determine whether section 18–3–207(1), 8B C.R.S. (1986) is overbroad, we must examine the degree to which the statute could be used to prohibit speech

---

1. Because we conclude that the statute is unconstitutionally overbroad, we need not consider the other issues raised by Whimbush in his petition.

2. Whimbush was also convicted of the lesser non-included misdemeanor offense of harassment. *See* § 18–9–111(1)(e), 8B C.R.S. (1986).

He does not challenge the propriety of that conviction on review.

3. Colo. Const. art. II, § 10.

4. U.S. Const. amends. I, XIV.

that is beyond the reach of governmental regulation. *Bolles v. People,* 189 Colo. 394, 397, 541 P.2d 80, 82 (1975).

■ A statute properly may criminalize threats which constitute "fighting words" provoking immediate violence. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Similarly, words that are calculated to produce immediate panic are not entitled to constitutional protection. *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919).

However, not all threats fall outside the scope of protected speech. For example, in *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), the United States Supreme Court determined that an NAACP consumer boycott was protected expression, even though the petitioners sought to persuade others to join the boycott through social pressure and the "threat" of social ostracism. According to the Court, "[s]peech does not lose its protected character ... simply because it may embarrass others or coerce them into action." *Id.* at 910, 102 S.Ct. at 3424. *See also Bolles,* 189 Colo. at 398, 541 P.2d at 83 ("[I]f unsettling, disturbing, arousing, or annoying communications could be proscribed, ... the protection of the First Amendment would be a mere shadow indeed.").

Similarly, in *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), the Supreme Court overturned an injunction against the distribution of leaflets accusing a real estate broker of "blockbusting" tactics. Although the organization distributed the leaflets to coerce the broker into signing an agreement to change his practices, the Supreme Court stated that "[t]he claim that the expressions were intended to exercise a coercive impact on [the broker] does not remove them from the reach of the First Amendment." *Id.* at 419, 91 S.Ct. at 1578. *See also NAACP,* 458 U.S. at 911, 102 S.Ct. at 3424; *Wurtz v. Risley,* 719 F.2d 1438, 1441 (9th Cir.1983).

Colorado's criminal extortion statute could be used to prohibit threats of imminent bodily harm and other types of non-protected speech without violating the federal or state constitutions. However, the statute is facially overbroad because it also covers threats of collective action in support of group demands protected by cases such as *NAACP* and *Keefe.* And, as the Oregon Supreme Court noted when examining an analogous coercion statute in *State v. Robertson,* 293 Or. 402, 649 P.2d 569 (1982):

> [A]part from reaching such relationships, the statute makes no distinction whether the coercive demands and threats are addressed by one person to another in a private confrontation or correspondence or in a more or less public setting designed to inform and perhaps involve others in the issues posed by the demand and the potential sanction. Yet such a setting often will involve protected communication with this wider audience.

*Id.* 649 P.2d at 589.

The prosecution argues that the element of "intent" to induce another person to act against his or her will limits the scope of the statute to conduct and speech that is not constitutionally protected. We disagree. As we stated in *People v. Smith,* 862 P.2d 939, 942 (Colo.1993), a specific intent requirement does not eliminate overbreadth concerns when the effect associated with the intent provision (in this case, to induce another to act against his or her will) encompasses a substantial amount of protected activity.

## III

■ Even though a statute is substantially overbroad, it should not be invalidated *in toto* when a limiting construction will restrict the statute's scope to unprotected conduct. *Ryan,* 806 P.2d at 940. However, a court should not apply a saving construction when to do so would involve rewriting legislation in the face of contrary legislative intent. *City of Seattle v. Ivan,* 71 Wash.App. 145, 856 P.2d 1116, 1123 (1993). *See also Scales v. United States,* 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961) ("Although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not ... carry this to the point of perverting the purpose of a statute."); Lawrence Tribe, *American Constitutional*

*Law* 1032 (2d Ed.1988). In our opinion, there are no limiting constructions which would render the statute constitutional consistent with the legislature's intent.

Whimbush argues that the statute should be construed to proscribe only threats to do an unlawful act. We reject this interpretation of the statute. The language of the statute does not so limit its intended reach, and we do not believe that the legislature intended such a requirement.

■ In interpreting a statute, our primary task is to ascertain and give effect to the intent of the legislature. *People v. Davis,* 794 P.2d 159, 180 (Colo.1990), *cert. denied,* 498 U.S. 1018, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991); *People v. Terry,* 791 P.2d 374, 376 (Colo.1990). To determine legislative intent, we begin with the language of the statute itself and interpret statutory terms in accordance with their commonly accepted meanings. *Thiret v. Kautzky,* 792 P.2d 801, 806 (Colo.1990); *People v. District Court,* 713 P.2d 918, 921 (Colo.1986).

The language of section 18–3–207(1) draws no distinction between "lawful" and "unlawful" acts. It is true that the statute requires that the prosecutor prove that the defendant made the threat "without legal authority." § 18–3–207(1); CJI–Crim. 10:17. However, in *People v. Schuett,* 833 P.2d 44, 47 (Colo. 1992), we interpreted a similar phrase, "without lawful justification," contained in our second degree kidnapping statute, section 18–3–302, 8B C.R.S. (1986), and concluded that the phrase "simply means an act not authorized or permitted by law—in other words, an act performed without lawful authority." We also noted that "[t]here is no basis ... for importing into the term the notion of acting in pursuit or in furtherance of some illegal purpose ulterior to the other conduct specifi-

cally prohibited by section 18–3–302(1)." *Id.* at 47–48. We believe that the plain meaning of the phrase "legal authority" in the extortion statute likewise refers to express legal authority, such as a police officer has when threatening to arrest a person suspected of committing a crime. As in *Schuett,* we decline to interpret the phrase to mean that the threat must be to perform an unlawful act.

Nor does the legislative history of section 18–3–207(1) reflect an intent to limit the statute's scope to threats to commit an illegal act. In 1971, the General Assembly repealed and reenacted Colorado's Criminal Code, chapter 40 of C.R.S.1963. At that time, the General Assembly added section 40–3–207, the immediate predecessor of the extortion statute at issue in this case.[5] According to the comments pertaining to the February 1971 draft of the Code,[6] this statute was taken from section 340.28 of the Wisconsin Criminal Code. Comments to the February 1971 draft of the Colorado Code of Crimes and Offenses 15 (on file with the Colorado Supreme Court Library). This section provided:

> Whoever threatens to confine or restrain or to cause bodily harm to the threatened person or another or to damage the property of the threatened person or another with intent thereby to induce the threatened person against his will to do an act or refrain from doing a lawful act may be fined not more than $2000 or imprisoned not more than 2 years or both.

Ch. 623, sec. 2, 340.28, 1953 Wis.Laws 659, 667 (repealed 1955). Like Colorado's extortion statute, Wisconsin's law did not distinguish between threats to commit "lawful" and "unlawful" acts.

The construction proposed by Whimbush is also unsatisfactory because a statute does not escape potential overbreadth solely because

---

**5.** The former version of this statute did not expressly prohibit threats to the "economic well-being" of the threatened person, and the crime was categorized as a class 1 misdemeanor entitled "criminal intimidation." Ch. 121, sec. 1, § 40–3–207, 1971 Colo.Sess.Laws 388, 421. In 1975, the statute was amended to include threats to cause economic harm, and the crime was elevated to a class 4 felony entitled "criminal extortion." Ch. 167, sec. 8, § 18–3–207, 1975 Colo.Sess.Laws 616, 618.

**6.** The February 1971 draft of the Code was not enacted. However, the criminal intimidation statute contained in that draft is the same as section 40–3–207. *See* February 1971 draft of the Colorado Code of Crimes and Offenses 68–69 (on file with the Colorado Supreme Court Library).

it is limited to threats involving unlawful conduct. *Robertson,* 649 P.2d at 587. As the Oregon Supreme Court stated in *Robertson,* "[v]erbal threats to take or initiate even unlawful violent action are not beyond first amendment protection by their content alone, divorced from any imminent realization." *Id.* at 580–81. *See also Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (confining a prohibition of threats to kill the President within First Amendment limits).

Having held section 18–3–207(1) to be facially overbroad, we recognize that the statute requires extensive revision to comply with constitutional requirements and that the rewriting of the statute is more appropriately done by the General Assembly than by this court. The states have taken varied approaches to criminal extortion or blackmail.[7] If the General Assembly chooses to reenact the criminal extortion statute, it must make many policy choices to define the scope of the statute and the nature of the conduct to be prohibited.

Accordingly, the judgment of the court of appeals is reversed, and the case is returned to that court with directions to remand the case to the trial court for the entry of an order vacating Whimbush's conviction and sentence for criminal extortion.

LOHR, J., dissents, and KIRSHBAUM and VOLLACK, JJ., join the dissent.

Justice LOHR dissenting:

The majority reverses the judgment of the Colorado Court of Appeals in *People v. Whimbush,* No. 90CA2071 (Colo.App. July 16, 1992), and thereby reverses the defendant's conviction for criminal extortion, § 18–3–207(1), 8B C.R.S. (1986) (the Colorado extortion statute), on the basis that the statute is unconstitutionally overbroad. In my opinion the constitutionality of the statute can be preserved by adoption of an appropriate limiting construction and the defendant's other grounds for reversal that we agreed to consider on certiorari review lack merit. Accordingly, I respectfully dissent and would affirm the judgment of the court of appeals.

## I. Introduction

The majority adequately sets forth the facts of the case. I agree with the majority that the Colorado extortion statute does produce potential overbreadth concerns. I also agree with the majority that the element of "intent" in that statute does not eliminate these concerns. Furthermore, although I believe that the legislature intended to prohibit threats to engage in or invoke[1] acts that are *unlawful,* I agree with the majority that the statute's reach is not limited to such threats.

I disagree with the majority that a limiting construction cannot cure any potential overbreadth concerns. I would construe the Colorado extortion statute to prohibit substantial threats of the types described in the statute not only when the threatened act or the third-party leverage invoked is unlawful, but also when the threatener employs lawful third-party leverage and his interests bear no substantial relationship to the interests of those whose leverage he uses.

Because I would uphold the facial constitutionality of the statute under this construction, I also address the other issues raised on certiorari review. I would hold that the statute is not unconstitutionally overbroad as applied to Whimbush and that the trial court did not err in denying a proposed jury instruction defining "threat" or in denying Whimbush's motion for judgment of acquittal when the prosecution offered no evidence that Whimbush acted without legal authority. I would thus affirm the judgment of the

---

7. Modern extortion statutes vary widely in terms of the types of threats that are prohibited, whether the threat must succeed, and what types of advantages must be sought for extortion to have been committed. *See* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.12(a) at 459–61 (1986). States also differ over the scope of a "claim of right" defense (i.e., when an individual may use a threat of harm to pursue a legitimate claim). *See* Model Penal Code § 223.4 cmt. 2(e) at 211–12 (1980).

1. A threat to have a third party inflict bodily injury on another is an example of a threat to "invoke," or cause to be performed, an unlawful act. In such a case the "leverage" of action by a third party is being employed, and the third-party leverage would be unlawful.

court of appeals and uphold Whimbush's conviction for criminal extortion.

## II. Facial Overbreadth

### A.

The Colorado extortion statute provides: Whoever without legal authority threatens to confine, restrain, or cause economic or bodily injury to the threatened person or another or to damage the property, economic well-being, or reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an act or refrain from doing a lawful act commits criminal extortion which is a class 4 felony.

§ 18–3–207(1), 8B C.R.S. (1986).

I am mindful that it is speech itself, albeit in the form of threats, against which the Colorado extortion statute is directed. A threat need not be carried out nor need it be successful in accomplishing its intended purpose in order to violate the statute. Proscriptions of "pure speech" must be scrutinized more carefully than proscriptions of expressive conduct to assure against intrusion on constitutionally protected free speech values. *7250 Corp. v. Bd. of County Comm'rs,* 799 P.2d 917, 922 (Colo.1990) ("As the mode of expression moves from pure speech to conduct ... the scope of permissible state regulation increases.").

Without a limiting construction, the Colorado extortion statute would reach some protected speech. Threats to organize a lawful strike unless employees are paid higher wages, or threats lawfully to take one's valuable services elsewhere unless one's salary is increased might become felonies under the statute. Yet such threats, while they may be substantial in the sense that they may be reasonably likely to induce a belief that they will be carried out and if carried out may produce significant economic injury or damage to reputation, would undoubtedly enjoy constitutional protection. Additionally, threats that are insubstantial because they are not reasonably likely to induce a belief that they will be carried out or because they threaten only insignificant confinement, restraint, injury, or damage may enjoy consti-

tutional protection yet fall within the literal proscriptions of the Colorado extortion statute. *See Wurtz v. Risley,* 719 F.2d 1438, 1442 (9th Cir.1983).

Whatever constitutional infirmities the Colorado extortion statute may suffer because of its potential overbreadth may be remedied by a limiting construction. In *People v. Ryan,* 806 P.2d 935, 939 (Colo.), *cert. denied,* —— U.S. ——, 112 S.Ct. 177, 116 L.Ed.2d 140 (1991), we noted that "a law should not be voided on its face unless its 'chilling effect' on constitutionally protected activity is substantial." We also noted that complete facial invalidation is " 'strong medicine' to be employed cautiously and 'only as a last resort,' " *id.* at 939 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982, 985 (Colo.1981)), and that "when dealing with a statute challenged as overbroad, state courts are free to construe the statute to avoid constitutional problems when it is subject to a limiting construction." *Id.* at 940 (citing *New York v. Ferber,* 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 3361 n. 24, 73 L.Ed.2d 1113 (1982)). Our previous cases demonstrate a willingness to adopt a limiting construction whenever possible in order to save a statute from facial invalidation. *See, e.g., People v. Fagerholm,* 768 P.2d 689 (Colo. 1989) (holding that the legislative scheme necessarily implied a five-year grace period for bringing post-conviction challenges); *City of Englewood v. Hammes,* 671 P.2d 947 (Colo.1983) (construing a municipal ordinance to require a mental state of "knowingly" when ordinance on its face did not include a *mens rea* element); *People v. Smith,* 620 P.2d 232 (Colo.1980) (same applied to criminal statute). To save a statute from invalidation due to overbreadth, "the key ... is to discover the core of constitutionally unprotected expression to which the statute might be limited." *Ryan,* 806 P.2d at 940.

### B.

Although almost all states have enacted some form of extortion or blackmail statute, *see* LaFave, Substantive Criminal Law § 8.12(a) at 459 and 459 n. 3, there is consid-

erable debate over just how to discover the "core" of unprotected expression properly prohibited by such statutes. *See* Symposium, *Blackmail,* 141 U.Pa.L.Rev. 1565 (1993).[2] For the purposes of construing the Colorado extortion statute, I would adopt a rationale similar to that proposed by James Lindgren. James Lindgren, *Unraveling the Paradox of Blackmail,* 84 Colum.L.Rev. 670 (1984).[3]

Lindgren concludes that what characterizes the core of expression within the intended reach of blackmail and extortion statutes is a kind of unfair bargaining or improper influence. *Id.* at 704. When an extortionist threatens to perform an unlawful act or cause an unlawful act to be performed, the unfair bargaining or improper influence is apparent. By criminalizing certain acts, the legislature has determined that such acts are improper under any circumstances. Using the threat of such improper acts as leverage is thus improper as well.

However, under some circumstances, certain acts that are not criminally sanctioned may be used to exert improper influence. In such cases, the acts are those of third parties, and the unfairness or impropriety arises from the use of third-party leverage to achieve ends lacking a substantial relationship to the interests of the persons whose leverage is so employed.[4] Blackmail and extortion statutes derive in part from the legislative perception that use of such leverage to serve unrelated personal interests is so anti-

thetical to public policy as to justify classification as criminal misconduct.

For example, a person who threatens to organize a lawful strike to extract a personal payoff is using the strikers' leverage for his own personal gain and may thus be guilty of extortion. The threatener is using improper influence or unfair bargaining. The impropriety or unfairness arises from the fact that there is no substantial relationship between the interests pursued by the threatener and the interests of those whose leverage he is using. In contrast, a person who threatens to organize a lawful labor strike to benefit workers would not be guilty of extortion because his interest is not in personal gain but in improving workers' welfare. This interest bears a substantial relationship to the interests of the workers whose leverage he uses. Of course, if the strike itself involves violence or is in some other way unlawful, the improper influence becomes more obvious and the threat may be extortionate regardless of the interests involved.

In some instances, a threatener's interest may be substantially related to the interests of those whose leverage he uses even though the threatener's interest is in personal gain. For example, a person who threatens to sue a tortfeasor unless the tortfeasor settles is using the leverage of the state for personal gain. However, the threatener would not be guilty of extortion because the interest of the state in fairly resolving private disputes is substantially related to the threatener's in-

2. The focus of much academic thought and writing on blackmail—a rubric that includes extortion as defined in the Colorado extortion statute—has not been on constitutional guarantees of freedom of expression. Rather, scholars have struggled to explain what James Lindgren has characterized as the paradox of blackmail, i.e., "[i]n blackmail, the heart of the problem is that two separate acts, each of which is a moral and legal right, can combine to make a moral and legal wrong." James Lindgren, *Unraveling the Paradox of Blackmail,* 84 Colum.L.Rev. 670 (1984) (footnote omitted); *see, e.g.,* Symposium, *Blackmail,* 141 U.Pa.L.Rev. 1565 (1993). For example, Whimbush may have had a moral and legal right to sell the film to a newspaper as well as a moral and legal right to seek payment of a debt. Yet his threat to sell the film unless paid may constitute blackmail, a moral and legal wrong. Courts have concluded that expression properly characterized as extortionate enjoys no

protection under constitutional guarantees of free expression. *E.g., U.S. v. Hutson,* 843 F.2d 1232, 1235 (9th Cir.1988); *U.S. v. Quinn,* 514 F.2d 1250, 1268 (5th Cir.1975) *cert. denied,* 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976).

3. The construction I would adopt is similar but not identical to Lindgren's approach. I do not, by my proffered construction, endorse all of Lindgren's views.

4. "[T]hreats of collective action in support of group demands protected by cases such as *NAACP* [*v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982),] and [*Organization for a Better Austin v.*] *Keefe* [, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) ]," which concern the majority, are threats in which such a substantial relationship of interests *does* exist. *See* Maj. op. at 1248.

terest in seeking redress for the tortfeasor's wrong. The crucial inquiry, then, in cases where a threatener uses third-party leverage, concerns the relationship between the threatener's interests and the interests of those third parties.

Not all cases of extortion, of course, will involve third-party leverage. A threat to commit physical violence unless paid, for example, involves no third-party leverage. Nor would third-party leverage be involved if someone threatened physical injury to a member of a person's family to gain money from the person. Such a threat is an application of direct leverage and not third-party leverage despite the fact that a third party (the family member) is involved. The threatener, not the family member, is exerting the leverage upon the threatened person. In cases of direct leverage, impropriety from unrelated leverage of third parties is not present. Any impropriety of direct leverage derives from the unlawfulness of the threatened act.

In contrast, third-party leverage would be involved if, rather than threatening physical injury to the family member, someone threatened to injure the family member's reputation. The leverage would be derived from those persons who would shun the family member rather than from the threatener directly. Just as a threat of direct harm to a family member may pressure a threatened person to act, a threat to harm the family member through the use of third party influence exerts leverage on the threatened person as well.

### C.

Another source of potential overbreadth lies in the possibility that the threat may be insubstantial. The Colorado extortion statute prohibits certain threats to "confine," to "restrain," to cause "injury," or to "damage." § 18-3-207(1), 8B C.R.S. (1986). Some threats that fall within these categories may be so insubstantial that to punish them would be inconsistent with the free speech values embedded in our constitutions.

This defect is cured by construing the statute to require that the threat be substan-tial. A substantial threat is one that is reasonably likely to induce a belief that it will be carried out and one that threatens significant confinement, restraint, injury, or damage. A threat meets the latter criterion if it threatens an act that would cause an average person to experience significant apprehension upon contemplation of the occurrence of the threatened act. *See Wurtz v. Risley*, 719 F.2d 1438, 1442 (9th Cir.1983) (invalidating on First Amendment overbreadth grounds a Montana intimidation statute that punished threats to "commit any criminal offense" in part because it applied "so broadly to threats of minor infractions" and "to threats not reasonably likely to induce a belief that they will be carried out"); *U.S. ex rel. Holder v. Cir. Ct.*, 624 F.Supp. 68, 71 (N.D.Ill.1985) (holding that an Illinois intimidation statute was substantially overbroad because it made it "an offense to threaten to commit any crime no matter how minor or insubstantial").

### D.

I would therefore construe the Colorado extortion statute to prohibit substantial threats of the types described in the statute not only when the threatened act or the third-party leverage invoked is unlawful, but also when the threatener employs lawful third-party leverage and his interests bear no substantial relationship to the interests of those whose leverage he uses.

The limiting construction I propose narrows the proscribed conduct sufficiently to eliminate any substantial chilling effect on constitutionally protected expression and thus immunizes the statute from invalidation on the ground of facial overbreadth.

The majority believes that "there are no limiting constructions which would render the statute constitutional consistent with the legislature's intent." Maj. op. at 1249. It also states that "a court should not apply a saving construction when to do so would involve rewriting legislation in the face of contrary legislative intent." *Id.* Finally, it notes that the United States Supreme Court has asserted that it will not construe a statute to the point of "perverting the purpose of a statute." *Id.* (quoting *Scales v. United*

*States,* 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961)). The construction I propose would be inconsistent with, contrary to, or pervert the intent or purpose of the statute only if the legislature intended to punish insubstantial threats or threats that invoked the actions of third-parties whose interests were substantially related to the interests of the threatener. I do not recognize, nor does the majority suggest, any such intent.

### E.

My proposed construction would not produce unconstitutional vagueness.[5] A statute will not be void for vagueness if "it fairly describes the conduct forbidden, and persons of common intelligence can readily understand its meaning and application." *Eckley v. Colo. Real Estate Comm'n,* 752 P.2d 68, 73 (Colo.1988).[6] The concept of third party leverage is readily understandable. For example, a person who threatens to send explicit sexual photographs of a victim to the victim's parents, relatives, and associates in order to extract money from the victim is using the leverage of those third parties. *See U.S. v. Hutson,* 843 F.2d 1232 (9th Cir. 1988). The interests of those third parties involve such concerns as morality, reputation, and respectability. The threatener must certainly be able to identify and understand those interests in order to attempt to use them to pressure the victim to act.

The requirement of a "substantial relationship" between the interests of the person making the threat and the interests of the third parties whose leverage is employed is similarly understandable by persons of common intelligence. The concept need not be defined with mathematical certainty to avoid unconstitutional vagueness. *Eckley,* 752 P.2d at 73. The requirement of a substantial relationship is "specific enough to give fair warning of the prohibited conduct, yet [is] sufficiently general to address the problem under varied circumstances and during

changing times." *Id.* A star athlete might use his fans' leverage to extract a larger salary from his employer by threatening to take his talents elsewhere unless paid more. It is readily understandable that his interest in receiving compensation for his performance is substantially related to his fans' interests in seeing him perform. It is likewise understandable that the interests of a victim's parents, relatives, and associates in explicit sexual photographs of the victim bear no substantial relation to the interests of an extortionist in extracting money.

Finally, the term "substantial" in the requirement that the threat be substantial is not impermissibly vague. Again, a substantial threat is one that is reasonably likely to induce a belief that it will be carried out and one that threatens an act that would cause an average person to experience significant apprehension upon contemplation of the occurrence of the threatened act. A person of common intelligence can readily recognize threats that are likely to induce such belief and produce such apprehension.

### III. As–Applied Overbreadth

Whimbush also challenges the constitutionality of the Colorado extortion statute as applied to him. His argument begins with the assumption that the Colorado extortion statute is facially overbroad. He also assumes that his threat was constitutionally protected because his threatened action was lawful and because he believed the owner of the mortuary owed him the money he demanded. Therefore, he argues, because the statute is facially overbroad, its application to his protected speech was doubly unconstitutional. I am unpersuaded by this argument.

Federal courts have clearly stated that extortionate speech is not constitutionally protected. In *U.S. v. Hutson,* the Court of Appeals for the Ninth Circuit stated that extortionate speech "is undoubtedly within the government's power to prohibit." *U.S. v.*

---

**5.** We have previously held that the Colorado criminal extortion statute is not unconstitutionally vague. *People v. Czemerynski,* 786 P.2d 1100, 1112 (Colo.1990). *Czemerynski,* of course, did not consider the effect of my proposed limiting construction.

**6.** A statute *as construed* is also subject to this standard. *See People v. Stevens,* 761 P.2d 768, 771 (Colo.1988) (noting that a limiting construction may save an otherwise vague statute.)

*Hutson,* 843 F.2d 1232, 1235 (9th Cir.1988). In *U.S. v. Quinn,* the Court of Appeals for the Fifth Circuit declared: "[E]xtortionate speech has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money, which is no protection at all." *U.S. v. Quinn,* 514 F.2d 1250, 1268 (5th Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976).

Therefore, a threat to perform even lawful acts is unprotected if the threat constitutes extortionate speech. Under the construction of the Colorado extortion statute that I would adopt, substantial threats to perform lawful acts are extortionate when the threatener uses leverage of third parties whose interests are not substantially related to the threatener's interests.

Whimbush's threat was substantial. The threat to sell the film to the newspaper was reasonably likely to induce a belief that it would be carried out. Whimbush contends that his threat was minor because the owner did not take it seriously. However, there can be no real question but that the threat would produce significant apprehension in an average person in circumstances similar to the owner's.

The interests of those who supplied the leverage used by Whimbush involve such issues as morality, judgment, maturity, or respectability and belong to the owner's customers and others who might look with disfavor upon the activities depicted in the photographs. Whimbush's interest was in gaining money that he allegedly believed was owed him. His interest is completely unrelated to the interests of those whose leverage he invoked.

Therefore, because Whimbush's threat was substantial and his interest was unrelated to the interests of those whose leverage he used, his threat constituted unprotected extortionate speech.

## IV.  Jury Instruction

Whimbush next argues that the trial court erred by ruling that under the Colorado extortion statute a threat need not be to engage in an unlawful act to be proscribed and by failing to give Whimbush's proposed jury instruction defining threat as a statement of intent to commit an unlawful act.

As the previous discussion indicates, under my proposed construction, when third-party leverage is invoked, the threatened act need not be unlawful to fall within the statute's reach. Whimbush's argument thus fails. Whimbush's reliance upon two of our decisions is unavailing. In *Schott v. People,* 174 Colo. 15, 18, 482 P.2d 101, 102 (1971), we cited a dictionary definition of "threat" in the context of the theft by threat statute (now codified at § 18–4–401, 8B C.R.S. (1986)). That dictionary definition included reference to an intent to commit an unlawful act. In that case, however, we were not addressing the issue of what constitutes a threat but were noting instead that theft by threat was not a lesser included offense of robbery because robbery did not require a threat at all. The definition that we employed was used to highlight the fact that robbery required only *force or intimidation* whereas a threat required a *declaration. Id.*

In *People v. Hines,* 780 P.2d 556, 559 (Colo.1989), we cited *Schott* to define "threat" in the context of the felony menacing statute. Again, the definition was phrased in terms of intent to commit an unlawful act. However, as in *Schott,* we were not addressing all aspects of the definition. Rather, we were considering whether a conditional threat qualified as a threat under the statute.

## V.  Legal Authority

Whimbush's final argument is that because the prosecution offered no evidence that he acted without legal authority, the trial court erred in denying his motion for judgment of acquittal. I agree with the majority that the phrase "without legal authority" in Section 18–3–207(1) does not mean that the threat is to perform an unlawful act. Maj. op. at 1249. Rather, given its natural meaning, "legal authority" refers to an identifiable form of legal authorization or permission.

Whimbush suggests that because he believed he was owed the money he demanded from the owner, he was not acting without legal authority. However, the fact that Whimbush may have had legal permission to

# 1256

seek payment of a lawful debt did not entitle him to seek such payment through improper means.[7]

In ruling on a motion for judgment of acquittal, a trial court must view the evidence in the light most favorable to the prosecution. *People v. Gonzales,* 666 P.2d 123, 127 (Colo. 1983). Additionally, "the court must give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." *Id.* at 128. In the present case, the evidence fairly supports the inference that Whimbush lacked legal authority to make his threats. Therefore, the trial court did not err in denying Whimbush's motion for judgment of acquittal.

For the foregoing reasons, I respectfully dissent and would affirm the judgment of the court of appeals.

KIRSHBAUM and VOLLACK, JJ., join in this dissent.

---

**7.** The Model Penal Code's theft by extortion provision incorporates such a "claim-of-right defense." Model Penal Code §§ 223.1(3)(b), 223.4 (1980). *See also* § 223.1 cmt. 1(b) at 156; § 223.4 cmt. 2(e) at 211. Furthermore, the Code's coercion provision does not prohibit "efforts to force another to pay a just debt or to perform his obligations under a contract." Model Penal Code § 212.5 cmt. 2 at 265. The Code, therefore, would not prohibit a person from attempting to collect a debt by threatening, as in *Hutson,* to send explicit sexual photographs of a debtor to the debtor's parents, relatives, and associates. *U.S. v. Hutson,* 843 F.2d 1232 (9th Cir.1988). The Colorado extortion statute contains no such defense, and I can discover no proper basis for construing it to include one.