**UNITED STATES of America,**

v.

**Autumn JACKSON, Jose Medina, a/k/a "Yosi Medina," and Boris Sabas, a/k/a "Borris Shmulevich," Defendants**

**No. So 97 Cr. 121(BSJ).**

United States District Court,
S.D. New York.

Dec. 15, 1997.

---

Legal Aid Society, Federal Defender Office (Robert M. Baum, Edward S. Zas), New York City, for Autumn Jackson.

Mary Jo White, U.S. Atty. for the Southern Dist. of New York (Paul A. Engelmayer, Lewis J. Liman, Asst. U.S. Attys.), for U.S.

## MEMORANDUM & ORDER

JONES, District Judge.

Pending is a motion by defendant Autumn Jackson, in which co-defendant Yosi Medina joins, to dismiss the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2). Specifically, Jackson argues that 18 U.S.C. § 875(d) (" § 875(d)") and § 155.05.2(e)(v) of the New York Penal Law (" § 155.05") are unconstitutionally overbroad and vague on their face and as applied in this case. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

On February 27, 1997, the Grand Jury returned a superseding indictment charging Jackson, Medina, and co-defendant Boris Sabas, a/k/a "Boris Shmulevich," in three counts.

Count One charged that from late 1996 until January 18, 1997, in violation of 18 U.S.C. § 371, the defendants and others conspired to (1) transmit in interstate commerce communications threatening to injure the reputation of the actor Bill Cosby with the intent to extort money from him, in violation of 18 U.S.C. § 875(d), and (2) travel in and use interstate commerce facilities with the intent to carry on extortion in violation of 18 U.S.C. § 875(d) and § 155.05 of the New York Penal Law, in violation of the Travel Act, 18 U.S.C. § 1952(a)(3).

Count Two charged that, from late 1996 to January 18, 1997, the defendants transmitted in interstate commerce communications containing threats to injure the reputation of Bill Cosby with the intent to extort money from him, in violation of 18 U.S.C. § 875(d).

Count Three charged that the defendants violated the Travel Act by using facilities and traveling in interstate commerce with the intent to carry on extortion in violation of 18 U.S.C. § 875(d) and Section 155.05 of the New York Penal Law.

During a thirteen day trial that began July 7, 1997 and concluded July 25, 1997, the Government introduced evidence in the form of testimony, tape-recorded conversations, and documents. This proof established that from late 1996 to January 18, 1997, the defendants engaged in a campaign to threaten to publicize in tabloid newspapers that Jackson was Cosby's daughter out-of-wedlock and that he was mistreating her if Cosby did not pay Jackson millions of dollars. The Government established that the defendants conveyed this threat to Cosby through his attorneys, his television network CBS, and his sponsors, including Eastman Kodak Company. The campaign culminated with Jackson's January 16, 1997 demand to Cosby's attorney that if Cosby did not pay her $40 million, she would take her damaging story to The Globe. This threat was accompanied by an unsigned copy of a contract between Jackson, Medina

and The Globe for the sale of Jackson's story about Cosby.

On July 25, 1997, the jury found Jackson and Medina guilty of all three counts of the Superseding Indictment and found Sabas guilty of Counts One and Three.

## DISCUSSION

### I. Overbreadth

Jackson asserts both a facial and an as applied overbreadth challenge to §§ 875(d) and 155.05.

#### A. Facial Overbreadth

■ As an initial matter, only a statute that is substantially overbroad may be invalidated on its face. Accordingly, in addressing a facial overbreadth challenge, a court's first task is to ascertain whether the enactment reaches a substantial amount of constitutionally protected conduct. *City of Houston, Texas v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). An act's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). The overbreadth doctrine is "strong medicine," and should be used "sparingly and only as a last resort." *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916).

Jackson argues that §§ 875(d) and 155.05, on their face and as interpreted by this Court, sweep constitutionally protected speech—"non-violent communications uttered in a good-faith effort to resolve legitimate financial disputes or accomplish legitimate political, social or economic goals" (Reply Mem., dated Oct. 3, 1997, at p. 5)— within their ambit. Her claim is incorrect, as the statutes do not cover such protected speech.

■ First, it is well settled that the punishment of certain threats does not offend the First Amendment. In this connection, courts have upheld similar statutes in the face of overbreadth challenges by narrowly interpreting the term "threats." Consistent with the First Amendment, Congress can proscribe threats that, according to their language and context, convey a gravity of purpose and likelihood of execution that render them beyond the pale of constitutional protection. *United States v. Kelner*, 534 F.2d 1020, 1026 (2d Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976). A "true threat"—which "on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution"—may be punished because it, itself, affronts the important social interests of "justice" and "equal rights under the law." *Kelner*, 534 F.2d at 1027.[1]

■ Accordingly, this Court has interpreted the "threats" punishable by §§ 875(d) and 155.05 as only those that are unequivocal, unconditional, and specific. For example, in this case the jury was instructed that:

a threat is an avowed present determination to injure, at once or in the future. *The mere hope, desire, or wish to injure someone's reputation is insufficient to constitute a threat.* In order to find that the defendant you are considering threat-

---

1. *See also United States v. Malik*, 16 F.3d 45, 50–51 (2d Cir.) (finding application of 18 U.S.C. § 876, which criminalizes mailing threatening communications, constitutional where jury found threat was unequivocal, unconditional, immediate and specific), *cert. denied*, 513 U.S. 968, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994); *United States v. Baudin*, 486 F.Supp. 403, 406 (S.D.N.Y.1980) ("rejecting defendant's First Amendment challenge to indictment where threat to injure persons, charged under 18 U.S.C. § 875(c), was sufficiently unequivocal, unconditional, immediate and specific ... to convey a gravity of purpose and imminent prospect of execution") (citing *Kelner*, 534 F.2d at 1027). Cf. *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (distinguishing between threat and constitutionally protected speech and stating that expressly conditional "political hyperbole" was not "true threat" as required for conviction under 18 U.S.C. § 871(a), which prohibits mailing threats to the United States President).

ened to injure Bill Cosby's reputation, you must find that a reasonable person would have understood the defendant's statement as a *serious expression of intent, determination, or purpose to injure the reputation of another person.*

To determine whether or not the defendant you are considering threatened to injure Bill Cosby's reputation, you should consider the circumstances under which the statement was made, including the kind of statement made, the place where it was made, to whom it was made, how it was spoken, *whether it was said plainly and unconditionally or in jest,* and its context with respect to surrounding conversation. You may also consider the language the defendant used and the reaction of the person to whom the communication was addressed.

(emphasis added) (Tr. 1777–78.)

Second, the "threats" prohibited by §§ 875(d) and 155.05 are not expressions of ideas or advocacy that typically implicate the First Amendment. Rather, § 875(d) is confined to (1) threats to injure the reputation of another, that are (2) made with the intent to extort money or things of value. Similarly, § 155.05 prohibits (1) threats to expose a secret tending to subject some person to hatred, contempt or ridicule, that are (2) made with intent to deprive another of property. This limited scope takes the statutes "out of the realm of social or political conflict where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas, broadly conceived to embrace the rough competition that is so much the staple of social or political dis-

course." *United States v. Velasquez,* 772 F.2d 1348, 1356 (7th Cir.1985) (upholding constitutionality of federal retaliation statute, 18 U.S.C. § 1513), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).[2] *See also United States v. Hutson,* 843 F.2d 1232, 1235 (9th Cir.1988) ("Because [18 U.S.C. § 876, which prohibits mailing threats to injure the reputation of another with intent to extort money or a thing of value] is limited to extortionate threats, it does not regulate speech relating to social or political conflict, where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas.").

█ Jackson also argues that only threats to perform independently unlawful actions, such as kidnapping or physical injury, can be constitutionally proscribed. This argument is wrong. Courts have rejected constitutional challenges to statutes similar to § 875(d) that proscribe threats to injure reputation as a means of obtaining money or property. *See Hutson,* 843 F.2d at 1235 (upholding constitutionality of 18 U.S.C. § 876 because statute targets only extortionate speech that is not related to social or political conflict and that is "undoubtedly within the government's power to prohibit").[3]

The cases cited by Jackson in her Reply Memorandum, in which state courts have struck down various state coercion statutes, do not dictate a different result. Although in *State v. Robertson,* 293 Or. 402, 649 P.2d 569 (1982), the court sustained an overbreadth challenge to Oregon's coercion statute, it did so because the statute impermissibly extended the principle of extortion to cover threats

---

**2.** As such, the statutes have no potential application to the kind of speech involved in *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (stating that threats of social ostracism to persuade people to join boycott, undertaken to advocate for political, social, and economic change, are constitutionally protected) or in *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) (finding constitutional protection for community organization's pamphleteering about real estate agent's racist "panic peddling tactic" that, while intended to influence agent's conduct, was open and vigorous effort to inform public of agent's practices), cited by Jackson.

**3.** *See also United States v. Quinn,* 514 F.2d 1250, 1268 (5th Cir.1975) (stating that extortionate speech "has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money, which is no protection at all"), *cert. denied,* 425 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976). *Cf. United States v. Nardello,* 393 U.S. 286, 289, 89 S.Ct. 534, 536, 21 L.Ed.2d 487 (1969) (characterizing attempt to obtain money from victims by threats to expose alleged homosexual conduct as extortionate, "since money was to be obtained from the victim by virtue of fear and threats of exposure"); *United States v. Hughes,* 411 F.2d 461, 465 (2d Cir.1969) (same), *cert. denied,* 396 U.S. 867, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969).

made in a public setting designed to inform and perhaps involve others in the issues posed by the demand. *Robertson*, 649 P.2d at 590.[4] Further, the *Robertson* court confirmed that extortion statutes are, and historically have been, constitutionally valid because they punish threats made to obtain property for "selfish gain" or personal benefit from a victim in a private, bilateral transaction akin to robbery. *Robertson*, 649 P.2d at 581, 587–89.

Similarly, the criminal extortion statutes struck down in *Whimbush v. People*, 869 P.2d 1245 (Colo.1994), and *State v. Weinstein*, 182 Ariz. 564, 898 P.2d 513 (App.1995) and the coercion statute invalidated in *City of Seattle v. Ivan*, 71 Wash.App. 145, 856 P.2d 1116 (1993) failed to require an intent to extort money or thing of value.[5] In fact, the statutes in *Robertson* and *Ivan* had no express intent element at all.

■ Jackson also complains that § 875(d) fails to define the requisite "intent to extort money or thing of value" and that the Court

interpreted that intent element too broadly.[6] The facial validity of statutes providing no greater specification or definition of intent, however, has been often upheld. *See Hutson*, 843 F.2d at 1235 (stating that "intent to extort" requirement of 18 U.S.C. § 876, which is the same as that in § 875, "guarantees that the statute reaches only extortionate speech"); *Velasquez*, 772 F.2d at 1356–57 (holding that "intent to retaliate" requirement of 18 U.S.C. § 1513(a)(2) is not vague or overbroad).

With respect to the Court's interpretation of the intent element, the Court first notes that while § 875(d) may criminalize extortionate threats to injure reputation that are common, their frequency does not necessarily render them constitutionally protected or legal. Moreover, the Court narrowly defined "intent to extort money or thing of value" by instructing the jury that "to extort means to obtain money or a thing of value from another by use of threats to reputation." (Tr.

---

4. The statute struck down in *Robertson* provided:
   A person commits the crime of coercion when he compels or induces another person to engage in conduct from which he has a legal right to abstain, or to abstain from engaging in conduct in which he has a legal right to engage, by means of instilling in him a fear that, if the demand is not complied with, the actor or another will: ... expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt, or ridicule....
   *Robertson*, 649 P.2d at 577.

5. The statute challenged in *Whimbush* provided:
   Whoever without legal authority threatens to ... damage the ... reputation of the threatened person or another with intent thereby to induce the threatened person or another against his will to do an act or refrain from doing a lawful act commits criminal extortion which is a class 4 felony.
   *Whimbush*, 869 P.2d at 1247.
   The statute analyzed in *Weinstein* provided:
   A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to ... expose a secret or an asserted fact, whether true or false, tending to subject anyone to hatred, contempt or ridicule or to impair his credit or business.
   *Weinstein*, 898 P.2d at 515.

6. Similarly, Jackson complains that § 875(d) fails to define "extortion," and that the Court removed a possible definition by ruling that the

Hobbs Act's definition does not apply. (Mem., dated July 24, 1997, at p. 5.)

Jackson is wrong. In that ruling, the Court merely stated that the limited "claim of right" defense available under the Hobbs Act is not available under § 875(d) and that the Government need not prove that a defendant had no lawful right to the property obtained. Threatening to injure someone's reputation is an "inherently wrongful" means to obtain money. *See United States v. Pignatelli*, 125 F.2d 643, 646 (2d Cir.) ("Threats to damage another's reputation are no proper means for determining a controversy. It may be adjusted either by suit or by compromise but settlement must not be effected by using defamation as a club.") *cert. denied*, 316 U.S. 680, 62 S.Ct. 1269, 86 L.Ed. 1754 (1942); *see also United States v. Von Der Linden*, 561 F.2d 1340, 1341 (9th Cir.1977) ("As a general rule, the truth of damaging allegations underlying a threat to injure the reputation of another is no defense to a charge of extortion.") (citing cases), *cert. denied*, 435 U.S. 974, 98 S.Ct. 1621, 56 L.Ed.2d 68 (1978). The Court did not, however, broadly rule that the general concepts defined as extortion under the Hobbs Act are inapplicable to prosecutions under § 875(d).

Moreover, in instructing the jury on the elements of § 875(d), the Court did provide a definition of "extortion": "to extort means to obtain money or a thing of value from another by use of threats to reputation." (Tr. 1779.)

1779.) [7]

■ Jackson further argues that the Court's refusal to graft a "specific intent" requirement onto § 875(d) (i.e. a requirement that the statute requires a "guilty mind") [8] and to allow for a "claim of right" defense under it renders the statute unconstitutionally overbroad. While Jackson may disagree with the Court's rulings on statutory interpretation, she fails to explain how these rulings affect or even implicate her First Amendment argument. Moreover, with respect to a specific intent element, the Court notes that it instructed the jury that Count One (conspiracy to violate §§ 875(d) and the Travel Act) required the Government to prove beyond a reasonable doubt that the defendants acted with bad purpose to disobey or disregard the law. (Tr. 1769.) Similarly, the Court instructed the jury that Count Three required a finding that the defendants knew that the activity they intended to facilitate was illegal. (Tr. 1785.)

Finally, the hypothetical situations that Jackson poses do not indicate that the statutes could be used to punish a substantial amount of constitutionally protected conduct. Several of the scenarios do not contain specific, unconditional, immediate threats or threats to injure another's reputation. In others, the postulated speakers do not necessarily have the requisite "intent to extort money or thing of value." In this connection, the store owner who threatens to report a non-paying customer to a credit reporting agency, the homeowner who threatens to report a poorly performing contractor to the Better Business Bureau, and the accident victim who threatens litigation are not engaging in "self-help." Rather, they are turning to neutral governmental or quasi-governmental intermediaries who then independently review the speaker's claim. Also, as the Government correctly points out, in these hypothetical situations the potential injury to reputation is incidental to the threat of raising the claim.

Accordingly, Jackson's facial overbreadth challenge to the statutes fails.

### B. As Applied Challenge

■ Not surprisingly, Jackson's papers are silent with respect to the application of §§ 875(d) and 155.05 to her own speech in this case. Here, the Superseding Indictment charged and the jury rationally found beyond a reasonable doubt that Jackson and her co-conspirators communicated a "true threat" to Cosby, by faxing an unsigned contract from The Globe to print Jackson's life story along with a demand for $40 million. This was precisely the kind of private transaction, motivated purely by selfish gain, that extortion statutes have always validly punished.

Accordingly, the statutes were constitutionally applied to Jackson and her co-conspirators.

### II. Void for Vagueness

■ The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Posters 'N' Things, Ltd.*

---

7. The Court also instructed the jury that the Government had to prove beyond a reasonable doubt that the defendants acted knowingly and intentionally in transmitting the threat, and that the defendants knowingly and intentionally communicated a threat. (Tr. 1778.) The Court further specified that

[a] person acts knowingly if he or she acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. A person acts intentionally if he or she acts deliberately and purposefully; that is, a defendant's acts must have been the product of the defendant's conscious objective rather than the product of a mistake or accident.

(Tr. 1778.)

8. In ruling that § 875(d) is not a "specific intent" crime, the Court observed that the statute does not contain a textual "willfulness" requirement. Nor is there a basis to impute such an element, as threatening someone's reputation in order to obtain money is an "inherently wrongful" type of conduct. (Tr. 1480–81.) *See Pignatelli*, 125 F.2d at 646. The inherent wrongfulness of threats to reputation is further evidenced by the structure of the statute itself, which in parallel language prohibits interstate communications that threaten (1) injury to property (18 U.S.C. § 875(d)), (2) injury to reputation (18 U.S.C. § 875(d)), and (3) to kidnap a person (18 U.S.C. § 875(b)), all made with intent to extort money or things of value. 18 U.S.C. §§ 875(b) and (d).

*v. United States,* 511 U.S. 513, 525, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539 (1994) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)); *United States v. Amer,* 110 F.3d 873, 878 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 258, 139 L.Ed.2d 185 (1997). Stricter standards of definiteness apply where, as here, First Amendment interests are implicated. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1973); *United States v. Thompson,* 76 F.3d 442, 452 (2d Cir.1996); *United States v. Chestnut,* 394 F.Supp. 581, 588 (S.D.N.Y.1975).

Jackson now claims that §§ 875(d) and 155.05 are unconstitutionally vague. Specifically, she argues that the statutes are impermissibly vague because (1) the statutes fail to provide or to refer to definitions for "extortion" or "intent to extort," and (2) the Court "left it up to the jury to use their 'common sense' to decide what 'extortion' means." (Mem., dated July 24, 1997, at p. 13.)

■ Jackson's first argument is simply wrong. "Extortion" does have a meaning, far wider than the original common law concept, that courts have repeatedly sanctioned when interpreting statutes involving extortion. *Hutson,* 843 F.2d at 1236 (rejecting defendant's argument that 18 U.S.C. § 876 fails to provide fair notice because it does not adequately define "extortion" and the common law definition does not apply). *Cf. United States v. Nardello,* 393 U.S. 286, 289, 89 S.Ct. 534, 536, 21 L.Ed.2d 487 (1969) (characterizing attempt to obtain money from victims by threats to expose alleged homosexual conduct as extortionate, "since money was to be obtained from the victim by virtue of fear and threats of exposure"); *United States v. Hughes,* 411 F.2d 461, 465 (2d Cir.) (same), *cert. denied,* 396 U.S. 867, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969).[9]

Moreover, the language of § 875(d) clearly defines the nature of the intent element: in making threats to injure another's reputa-tion, the defendant must have acted with the intent of extorting money or a thing of value.

■ As for her second argument, Jackson misunderstands the Court's instructions to the jury. When instructing the jury on the elements under § 875(d), the Court charged that:

the final element that the Government must prove beyond a reasonable doubt is that the defendant you are considering acted with the intent to extort money or a thing of value from Bill Cosby. You should use your common sense to determine whether the defendant you are considering had the requisite intent to extort.

(Tr. 1779.) As is plainly clear, the Court simply preserved for the jury its most basic task—the determination of intent. In fact, the Court further explained to the jury that "to extort means to obtain money or a thing of value from another by use of threats to reputation." (Tr. 1779.)

■ Further, the scienter requirement— "intent to extort money or thing of value"— helps to ensure adequate notice of the proscribed conduct. *See Thompson,* 76 F.3d at 452 (holding that scienter requirement—"motivated by an improper purpose"—in 18 U.S.C. § 1512, witness tampering statute, provides adequate notice that given conduct is proscribed).[10]

Finally, law enforcers are sufficiently guided by the fact that the statutes apply only to threats to injure reputation, and only when such threats are made with the intent to extort money or a thing of value. Additionally, as stated above, the Hobbs Act and common law provide definitions of "extortion" to guide law enforcement.

The Court also notes that this is not a case where the challenged statutes contain absolutely no standard of conduct or have no core. Rather, the statutes apply to threats to injure reputation made with the intent to extort money or things of value. *See Goguen,* 415 U.S. at 578, 94 S.Ct. at 1249 (up-

---

**9.** In addition, as noted above, (*see* n. 7, *supra*), the Hobbs Act remains a source of definition for "extortion."

**10.** Although the Court ruled that a "good-faith" defense is not available under § 875(d), the Government must still prove that a defendant intended to extort money or a thing of value from another.

holding facial vagueness challenge where criminal statute punished "whoever ... treats contemputuously" the flag of the United .States, which contained no ascertainable standard of proscribed conduct). Moreover, even if the outer boundaries of the statutes are imprecise, any such uncertainty has little relevance here, where Jackson's conduct falls squarely within the "hard core" of the statutes' proscriptions. *See Chestnut*, 394 F.Supp. at 588 (citing *Broadrick*, 413 U.S. at 608, 93 S.Ct. at 2913); *see also Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *Amer*, 110 F.3d at 878 (citing *Hoffman*, 455 U.S. at 495, 102 S.Ct. at 1191).

Accordingly, the Court finds that §§ 875(d) and § 155.05 are not unconstitutionally vague, either facially or as applied.

## CONCLUSION

For the reasons set forth above, the defendant's motion is denied.

So ordered.